J-S04031-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: D.M., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: R.R. | No. 1499 MDA 2014 |

Appeal from the Order entered August 8, 2014,
in the Court of Common Pleas of Lancaster County, Juvenile
Division, at No(s): CP-36-DP-0000193-2014

BEFORE:  BOWES, ALLEN, and STRASSBURGER*, JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED FEBRUARY 19, 2015**

R.R. (Mother) appeals from the order entered August 8, 2014, in the Lancaster County Court of Common Pleas, which adjudicated dependent her minor son, D.M. (Child).  We affirm.

On October 21, 2011, the Lancaster County Children and Youth Social Service Agency (the Agency) received a report concerning Mother and her paramour J.M. (Paramour).  At the time the report was received, Mother and Paramour were living together with Mother's two daughters.  Paramour was believed to be the father of these children.  The report raised concerns relative to alleged substance abuse, unstable mental health, unstable housing, and poor parenting ability.  The Agency conducted an assessment of Mother and Paramour, and the case was closed on December 20, 2011.

The Agency received a second report concerning Mother and Paramour on December 7, 2012.  This report indicated that Paramour was suicidal and being evaluated for commitment to a mental facility.  The report also stated

_____

* Retired Senior Judge specially assigned to the Superior Court.

that Paramour used marijuana regularly, had anger issues, acted aggressively towards Mother's children, and that domestic violence was occurring in the home. The Agency received an additional report of domestic violence on December 11, 2012.

On January 22, 2013, the Agency received a report that police had been summoned to the home by Paramour, who had requested that Mother be removed. When the officers spoke with Mother, she indicated that she had left her daughters in the care of Paramour, and that she later discovered one of them walking around carrying a pipe used to smoke marijuana. Mother showed the pipe to the officers, who reported that it smelled like burnt marijuana. The officers also were concerned with the messy condition of the home.

Following this report, an Agency caseworker informed Paramour that a safety plan would need to be developed for Mother's children. However, Mother and Paramour were unable to agree on a caretaker for the children. Paramour then refused to sign any documentation and claimed that he was not the father of Mother's children. The father of Mother's children was later determined to be N.B. The children were placed in the custody of the Agency, and Mother failed to make significant progress toward reunification. Her parental rights were terminated as to both daughters on May 22, 2014.

Child was born in July of 2014. Shortly after Child's birth, the Agency filed a petition for temporary custody, as well as a shelter care application and a motion for finding of aggravated circumstances. A dependency

hearing was held on August 7, 2014, and, on August 8, 2014, the juvenile court entered its order adjudicating Child dependent. The court issued an order finding aggravated circumstances as to Mother that same day. The order indicated that no efforts were to be made to reunify Mother with Child.[1] Mother timely filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

Mother now raises the following issues for our review.

I. Whether the [juvenile c]ourt erred when it concluded that the child is a dependent child?

II. Whether the [juvenile c]ourt erred in concluding that the current placement goal for the child to be returned to parent or guardian referred only to the unknown Father and not to Mother?

III. Whether the [juvenile c]ourt erred in concluding that Mother should not be provided a child permanency plan?

IV. Whether the [juvenile c]ourt erred in its Aggravated Circumstances Order [by ordering] that no efforts are to be made to preserve the family and reunify the child with Mother?

V. Whether the [juvenile c]ourt erred in its Aggravated Circumstances Order that such disposition is determined to be best suited to the protection and physical, mental, and moral welfare of the child[?]

---

[1] At the time of the dependency hearing, the identity of Child's biological father remained unknown. It was believed by the Agency that Child was the son of either Paramour or N.B. The juvenile court indicated during the hearing that a permanency plan would be developed for Child's father once his identity was determined. N.T., 8/7/2014, at 11-12; **see also** Juvenile Court Opinion, 9/30/2014, at 3 ("The results of a genetic test have not yet been received. When they are, a plan will be developed for the father.") (citation omitted).

Mother's Brief at 6 (suggested answers omitted).[2]

We consider Mother's issues mindful of the following.

[T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re A.B.*, 63 A.3d 345, 349 (Pa. Super. 2013) (quoting *In re R.J.T.,* 9 A.3d 1179, 1190 (Pa. 2010)).

Dependency proceedings are governed by the Juvenile Act, 42 Pa.C.S. §§ 6301-6375. The Juvenile Act defines "dependent child" as follows, in relevant part.

**"Dependent child."** A child who:

(1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or

---

[2] While Mother lists five questions for our review, her brief contains a single argument section in which she raises only two distinct claims. Thus, Mother's brief is in violation of our Rules of Appellate Procedure. *See* Pa.R.A.P. 2119(a) (providing that the argument "shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."). However, because Mother's procedural error does not impede our review, we decline to dismiss this appeal. *See Green v. Green*, 69 A.3d 282, 285 n.2 (Pa. Super. 2013) (quoting *White v. Owens–Corning Fiberglas, Corp.,* 668 A.2d 136, 141 (Pa. Super. 1995), *appeal denied*, 683 A.2d 885 (Pa. 1996)) ("'[I]f the failure to comply with the rules of appellate procedure does not impede review of the issues or prejudice the parties, we will address the merits of the appeal.'").

control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk; [or]

\*\*\*

(10) is born to a parent whose parental rights with regard to another child have been involuntarily terminated under 23 Pa.C.S. § 2511 (relating to grounds for involuntary termination) within three years immediately preceding the date of birth of the child and conduct of the parent poses a risk to the health, safety or welfare of the child.

42 Pa.C.S. § 6302. In order to adjudicate a child dependent, the court must determine that the above definition has been met by clear and convincing evidence. *A.B.*, 63 A.3d at 349.

Instantly, Mother's first issue is that the juvenile court erred by adjudicating Child dependent. Mother's Brief at 10-11. Mother argues that there was no evidence presented to substantiate the claim that Child is dependent, "other than the fact that Mother's parental rights to her two other children were involuntarily terminated and that she took drugs while pregnant." *Id.* at 10 (quotation marks and citation omitted). Mother asserts that "[s]ince the child was taken into the Agency's custody shortly after he was born and Mother was not given any opportunity to parent the child, there was insufficient basis for the [c]ourt to conclude that he is a dependent Child." *Id.*

In its opinion pursuant to Pa.R.A.P. 1925(a), the juvenile court offered

the following explanation for its decision to adjudicate child dependent.

> Mother was not capable in the past and is not now capable of providing appropriate care, control[,] and subsistence for [Child]. She has a history of neglecting her two daughters to an extent leading to the involuntary termination of her parental rights. She did not comply with her earlier plan. She took drugs while pregnant. Although she knew that her contact with the child was at risk, she failed to attend a fourth scheduled visit. No reason was provided to the court to indicate her care of [Child] would be at an acceptable level, that she meant to be drug-free, or was committed to him.

Juvenile Court Opinion, 9/30/2014, at 4.

After a thorough review of the record in this matter, we conclude that

the juvenile court did not abuse its discretion. At Child's dependency

hearing, the Agency presented the testimony of Agency caseworker, Emily

Harris. Ms. Harris testified that she assisted in the preparation of the

pleadings filed by the Agency in this matter. N.T., 8/7/2014, at 3. She

agreed that the facts alleged in these documents were accurate. *Id.* at 4.

In the allegations of dependency accompanying the motion for finding of

aggravated circumstances, the Agency described Mother's prior history with

the Agency, and the involuntary termination of Mother's parental rights to

her two older children.

Ms. Harris further testified that Mother tested positive for marijuana at

the time Child was born. *Id.* at 4. Mother indicated that she last used

marijuana one week prior to Child's birth. ***Id.***[3] After the petition was filed, Mother was offered weekly visits with Child. ***Id.*** Mother does well with Child during visits. ***Id.*** at 7. However, Mother did miss one of her four scheduled visits, reportedly because she was sick and did not want to make Child sick as well. ***Id.*** at 4, 7-8. Mother also attended one of Child's two medical appointments and "has been asking how he's doing." ***Id.*** at 4. Ms. Harris noted that Mother claimed to be living with her mother and her grandparents, but that she had received "several reports" that Mother was actually residing with Paramour. ***Id.*** at 6, 8-9.

Accordingly, the record supports the juvenile court's decision to adjudicate Child dependent. Initially, we note that the court has relied exclusively on the first definition of "dependent child" presented in the Juvenile Act, quoted *supra*, relating to situations where a child is without proper parental care or control. ***See*** 42 Pa.C.S. § 6302. The more appropriate definition in this matter can be found at subsection ten, also quoted *supra*, and provides for dependency where a child "is born to a parent whose parental rights with regard to another child have been involuntarily terminated … within three years immediately preceding the date of birth of the child and conduct of the parent poses a risk to the health, safety or welfare of the child." ***Id.*** The subsection ten definition of

---

[3] This testimony may contradict the Agency's allegations of dependency, which indicate that it is unknown whether Mother was positive for marijuana at the time Child was born, but that Mother tested positive for marijuana in March and June of 2014.

"dependent child" is directly on point, as it is undisputed that Mother's parental rights to her two older children were involuntarily terminated shortly before Child's birth, and that Mother continues to engage in dangerous conduct, namely drug use, which poses a risk to the health, safety, and welfare of Child.

Additionally, it was not an abuse of discretion to adjudicate Child dependent based on the subsection one definition of "dependent child."  "It is well-settled that 'a finding of dependency can be made on the basis of prognostic evidence and such evidence is sufficient to meet the strict burden of proof necessary to declare a child dependent.'" *In re E.B.*, 83 A.3d 426 (Pa. Super. 2013) (quoting *In re R.W.J.*, 826 A.2d 10, 14 (Pa. Super. 2003)).  This Court has held that a child may be adjudicated dependent based on evidence that a parent has engaged in abuse or neglect resulting in the dependency of that child's siblings.  In such cases, the question is not whether the subject child is likely to suffer the same sort of abuse that his or her siblings suffered.  "Rather, the key question is whether the siblings fit the broader definition of lacking 'proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental or emotional health, or morals.'" *In re M.W.*, 842 A.2d 425, 429 (Pa. Super. 2004) (quoting 42 Pa.C.S. § 6302).

In *M.W.*, a panel of this Court held that five siblings of a child who had been sexually abused at the hands of her father could be adjudicated

- 8 -

dependent, even though there was no evidence that the siblings were at risk of being sexually abused themselves. *Id.* at 429-30. In *In re G.T.*, 845 A.2d 870, 871 (Pa. Super. 2004), we held that a child could be adjudicated dependent where her parents failed to seek medical treatment for the child's sister, resulting in permanent brain damage. We reasoned, "[i]t is of no moment that the 'abuse' in the present case is parental neglect of T.G.'s sister. The Juvenile Act and *M.W.* allow us to assume that any medical problem T.G. might have developed would have been similarly ignored." *Id.* at 874. More recently, in *E.B.*, a panel of this court affirmed an adjudication of dependency where the juvenile court expressed concern that E.B.'s father would not be able to care for her due to her "'special medical needs.'" 83 A.3d at 433 (quoting Juvenile Court Opinion, 7/5/2013, at 9–10). We concluded that the court did abuse its discretion, even though the court's concerns resulted from Father's alleged physical abuse of E.B.'s siblings. *Id.* at 433-34.

Similarly, it was reasonable for the juvenile court to infer in the present case that Mother's prior failure as a parent for Child's older siblings demonstrated her current inability to provide proper parental care and control to Child. This is especially true where, as here, Mother's parental rights were terminated less than a month and a half prior to Child's birth, and where Mother continued to use drugs during her pregnancy with Child. No relief is due.

Mother's next issue is that the juvenile court erred by concluding that the involuntary termination of her parental rights to her older children constituted an aggravated circumstance, and that this aggravated circumstance permitted the court to deny her a child permanency plan. Mother's Brief at 11. Mother contends that the court did not provide her with an opportunity to show that she could achieve reunification with Child, that a safety plan should have been put in place, and that services should have been offered to assist Mother with parenting. *Id.* Mother emphasizes that she is living with her mother and her grandparents, and that there was no negative testimony presented during the dependency hearing to suggest that they pose a risk of harm to Child. *Id.* at 11-12. Finally, Mother complains that the court erred by not providing her with a permanency plan while offering a plan to Child's unknown father. *Id.* at 12.

In contrast, the juvenile court concluded that the involuntary termination of Mother's parental rights was an appropriate basis for finding aggravated circumstances. Juvenile Court Opinion, 9/30/2014, at 5. The court explained that it had the option of not providing a reunification plan once aggravated circumstances were established, and that it concluded that reunification was not a viable goal for Mother in the instant matter. *Id.*

We again conclude that Mother is not entitled to relief. Pursuant to the Juvenile Act, if a court finds that a child is dependent, and aggravated circumstances have been alleged, the court must next consider whether

aggravated circumstances exist. 42 Pa.C.S.A. § 6351(e)(2). If the court concludes that aggravated circumstances exist, the court may order that reasonable efforts to reunify the subject child with his or her family need not be made. *Id.*; *In re M.S.*, 980 A.2d 612, 615 (Pa. Super. 2009), *appeal denied*, 985 A.2d 220 (Pa. 2009) ("[A]ll family reunification may cease in the presence of a finding of aggravated circumstances[.]"); *In re R.P.*, 956 A.2d 449, 455 (Pa. Super. 2008) ("although courts have elected in some cases to return children to their families after finding the existence of aggravated circumstances, the decision whether to pursue reunification is made on a case-by-case basis."). The Juvenile Act defines "aggravated circumstances" to include situations where "[t]he parental rights of the parent have been involuntarily terminated with respect to a child of the parent." 42 Pa.C.S. § 6302.

Here, it is clear that "aggravated circumstances" exist, as Mother's rights to her older children were terminated involuntarily. The juvenile court was, therefore, permitted to conclude that reunification services need not be offered to Mother. The court's decision was reasonable, considering Mother's prior failures at reunification, and considering her continued drug use during her pregnancy with Child. Thus, we conclude that the court did not abuse its

discretion by finding aggravated circumstances, and by denying Mother a child permanency plan.[4]

Accordingly, because we conclude that none of Mother's claims entitles her to relief, we affirm the order of the juvenile court.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/19/2015

---

[4] We note that we could also find this issue waived, as Mother has failed to support her argument with citations to pertinent authority. ***Giant Food Stores, LLC v. THF Silver Spring Development, L.P.***, 959 A.2d 438, 444 (Pa. Super. 2008) ("The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority. Failure to do so constitutes waiver of the claim.") (citations and quotation marks omitted).