In the Interest of R.P., a Minor, Date of Birth 02/02/2006,

Appeal of K.P., Appellant

In the Interest of L.P., Date of Birth 7/21/2003, a Minor,

Appeal of K.P., Appellant

In the Interest of L.P., a Minor,

Appeal of J.P., Appellant

In the Interest of R.P., a Minor,

Appeal of J.P., Appellant.

Superior Court of Pennsylvania.

Submitted May 12, 2008.
Filed Aug. 21, 2008.

Paul Sotak, Scranton and Brenda M. Kobal, Moosic, for K.P.

Matthew J. Galasso, Milford, for R.P. and L.P.

William V. Peters, Clark Summit and Robert M. Buttner, Scranton, for J.P.

Stacey Beecher, Milford, for Pike County Children and Youth, Participating Party.

BEFORE: FORD ELLIOTT, P.J., BOWES and COLVILLE,* JJ.

OPINION BY BOWES, J.:

¶ 1 K.P. ("Mother") and J.P. ("Father") (also collectively referred to as "Parents") appeal from the orders dated October 31, 2007, which were filed November 1, 2007, changing the placement goal for their children, R.P. and L.P., to adoption. As these appeals involve identical parties and derive from the same permanency hearing determinations and orders, we have elected to

---

* Retired Senior Judge assigned to the Superior Court.

discuss them together.[1] Following our complete and thorough review of the record, we affirm.

¶ 2 Eighteen-month-old R.P. arrived at the Bon Secours Community Hospital Emergency Room on August 26, 2007, with a multitude of serious, life-threatening injuries strongly indicative of child abuse. At the dependency hearings, physicians testified that R.P. had suffered over 100 bruises on his body, a skull fracture, healing lacerations on his head and foot, a massive bilateral subdural hematoma, a healing wrist fracture, a possible hip fracture, brain and retinal hemorrhaging, and a web-like pattern of cuts between his fingers. Several medical experts opined that R.P.'s injuries were the result of Shaken Baby Syndrome and Battered Baby Syndrome. On October 4, 2007, the trial court determined that Parents were the perpetrators of the horrific abuse, and declared R.P. and his four-year-old sister, L.P., to be dependent children. The trial court also found the existence of aggravated circumstances and directed that no reunification efforts were required by Pike County Children and Youth Services ("CYS"). Mother filed a timely appeal of the October 4, 2007 dependency orders, which we affirmed. *See In the Interest of R.P.,* 2008 PA Super 196, 957 A.2d 1205 (Pa.Super.2008).

¶ 3 As required by 42 Pa.C.S. § 6351(e)(3)(ii)(A) and Pa.R.J.C.P.

1607(A)(1), the trial court conducted a permanency hearing on October 31, 2007, within thirty days of the adjudication of dependency.[2]

¶ 4 Melissa Garrick, a CYS caseworker in the placement unit, testified regarding the children's status and described the recommended goals for each of them. She explained that R.P. remained hospitalized and that L.P. successfully had been placed into a foster home. Ms. Garrick then presented the October 23, 2007 permanency plans for each child, noting the substance and execution of these plans as follows:

A: They are for the foster parents to provide a stable and loving environment, meet the medical, dental and educational needs of the children. For the agency to locate an adoptive home for each child.

Q: And to what extent has the plan been complied with?

A: The foster parents are meeting the objectives for L.P. The objectives can't be met for R.P. at this time due to his hospitalization[,] and the agency has not yet determined the identity of an adoptive family.

N.T., 10/31/07, at 9–10. Ms. Garrick further represented that family members had been rejected as possible caretakers, noting that kinship care is utilized by CYS only in allowing the family an opportunity to correct the original circumstances that made the placement necessary. Thus, as

1. The separate appeals of Parents raise identical issues, and Mother solely asserts additional claims. We employ the term "Parents" where the arguments presented by the parties are virtually identical; any divergent contentions raised individually are attributed either to "Mother" or "Father."

2. The Juvenile Act was amended in part on December 18, 2007, nearly two months after the issuance of the trial court's October 31, 2007 orders. The addition to 42 Pa.C.S. § 6351(e)(1), effective January 1, 2008, re-

quires the trial court in a permanency hearing to consult with the child in a manner appropriate to his age and maturity. Since this change occurred subsequent to the trial court's decision, the new language does not apply herein. Even if the alteration did apply, however, the statute as amended would not impact our disposition, as we are confident the court complied with the spirit of this amendment. Moreover, Parents raise no issue in this regard.

the trial court found that aggravated circumstances were present and directed that reunification would not be sought, CYS did not consider placing the children with relatives.

¶ 5 Ms. Garrick also provided general information about R.P.'s medical condition at that time:

R.P. has a trach. He also has a g-tube, a feeding tube. He can't sit up. He is not talking. He is moving his hands now[,] and he does respond to voices. He turns his head when you talk to him. Yesterday he had a prosthetic plate surgically placed in his head to protect his brain where the part of his skull was removed for the—to accommodate the brain swelling from his injuries. He should be able to be transferred to rehab as early as Thursday, but we are waiting on a bed to become available.

L.P. is in foster care. She has developed very close bonds with the four-year-old foster brother. They play on a regular basis. I saw her Friday in the foster home. She has developed very close bonds with her foster parents. She is eating well. Initially she showed great anxiety over getting a bath, but the foster parents say that that has decreased quite a bit. She sleeps well at night. She doesn't suffer any night terrors. She is very boisterous in her play[,] and she is out-going with her foster brother. She interacts very, very well with him. They play.

*Id.* at 7–8. In addition, at the court's behest, Ms. Garrick described R.P.'s care provided by the medical staff at Westchester Medical Center and noted that the nursing staff was very attentive to R.P.'s needs. *Id.* at 11.

¶ 6 At the conclusion of Ms. Garrick's testimony, the trial court determined that the children's current placements were necessary, appropriate, and safe. The court also ruled that there had been substantial compliance with the October 23, 2007 permanency plans presented by CYS. Due to the existence of aggravated circumstances and the court's instruction that no further efforts to preserve or reunify the family would be made, the trial court ordered that adoption by July 31, 2008, was a reasonable goal for both children. Accordingly, as required by 42 Pa.C.S. § 6351(f)(9), it directed CYS to file a petition to terminate parental rights and to identify possible adoptive families for the children. Permanency Hearing Determination and Order, 11/1/07.

█ ¶ 7 As noted *supra,* Mother and Father each filed an appeal. We first address their shared contention,[3] which is whether the trial court lacked jurisdiction to conduct the October 31, 2007 permanency hearing because Mother had appealed the October 4, 2007 orders of dependency.

¶ 8 Parents urge that the trial court erred in conducting the October 31, 2007 permanency hearing due to Mother's appeal of the October 4, 2007 orders of dependency. *See In the Interest of R.P.,*

---

3. Parents' other shared contention relates to whether the trial court erred in disregarding designated family members and kinship care as possible adoptive placements for the children. We addressed this precise issue in Mother's appeal from the adjudication of dependency; Father's argument is consistent and does not propose any new or alternative claims. Since this Court "has considered and decided a question submitted to it upon appeal, it will not, upon a subsequent appeal on another phase of the same case, reverse its previous ruling . . . ." *Block v. Bilinski,* 823 A.2d 970, 972 (Pa.Super.2003) (quoting *Reamer's Estate,* 331 Pa. 117, 200 A. 35, 37 (1938)). Accordingly, we incorporate our disposition from Mother's appeal by reference in the instant case and will not address it anew. *See In the Interest of R.P., supra.*

*supra.* As noted *supra* at footnote three, Mother assailed the findings of dependency and aggravated circumstances in that appeal. In support, Parents assert that "after an appeal is taken … the trial court or other government unit may no longer proceed further in the matter." Pa. R.A.P. 1701(a). Accordingly, Parents contend that by rendering a final order on October 4, 2007, which Mother appealed, the trial court was precluded from conducting the permanency hearing.

¶ 9 We disagree. In *In the Interest of H.S.W.C.-B,* 575 Pa. 473, 836 A.2d 908 (2003), a case addressing the finality of orders granting or denying a status change in dependency cases, our Supreme Court stated, in pertinent part:

> In order to avoid gamesmanship, and because of the time needed for appellate review, all orders denying goal changes or termination of parental rights will remain in effect until overturned on appeal or rendered moot by a subsequent order. **However, all statutory review hearings should continue at the prescribed intervals;** generally, a stay should not be ordered and proceedings halted pending the appeal. **As the best interest of the children is always paramount, the continued finger of the trial court on the pulse of the case is needed, even while the matter is appealed.**

*Id.* at 911 (emphasis added).

¶ 10 Parents assail the applicability of *H.S.W.C.-B* to the case *sub judice.* Mother asserts that in conducting the statutorily-mandated permanency hearing, the trial court proceeded as though "[her] appeals were certain to be inconsequential." Mother's brief at 12. Father argues that the Court in *H.S.W.C.-B* merely allowed the trial court to exercise jurisdiction in a limited situation involving appellate review of an order denying a goal change to adop-

tion. Father contends that *In re Griffin,* 456 Pa.Super. 440, 690 A.2d 1192 (1997), is instructive.

¶ 11 In *Griffin,* foster parents who were found in contempt of a court order and had a child removed from their care subsequently argued that the trial court lacked jurisdiction to remove the child because the biological mother had filed a pending appeal challenging the termination of her rights. The *Griffin* Court concluded that since the biological mother's appeals "were neither relevant to nor at issue in the contempt proceedings," the juvenile court "retained jurisdiction over all issues relating to the contemptuous conduct of appellants." *Id.* at 1199. Father adopts the logic presented in *Griffin* to argue that conversely herein, Mother's appeals were at issue during the permanency hearing, and the trial court did not have jurisdiction to proceed.

¶ 12 We believe *Griffin* actually negates Father's position. We stated therein:

> Were we to accept appellants' argument that Juvenile Court is deprived of jurisdiction **once an appeal of any aspect of a dependency action is filed,** we would render the court powerless to prevent any abuse, no matter how egregious, of a dependent child at the hands of his custodian. Most dependency actions … involve a variety of issues, parties and Orders of court. A holding that deprives Juvenile Court of jurisdiction merely because a single Order, involving any issue or party, has been appealed would not only defy logic, but it would also frustrate the statutory authority of Juvenile Court to exercise continuing independent and original authority to adjudicate in the best interests of a dependent child. *See In re Lowry,* 506 Pa. 121, 484 A.2d 383, 386 (1984) ("[Juvenile Court] acts pursuant to a separate dis-

cretionary role with a purpose of meeting the child's best interests.").

*Id.* at 1200 (emphasis added).

¶ 13 Clearly, as in *In the Interest of H.S.W.C.-B, supra,* where our Supreme Court directed that statutory review hearings continue while an appeal is pending, the trial court herein was correct in holding the permanency hearing. *See eToll, Inc. v. Elias/Savion Advertising, Inc.,* 811 A.2d 10 (Pa.Super.2002) (where clear precedent to resolve issue is lacking, our role as intermediate appellate court requires that we attempt to predict how Pennsylvania Supreme Court would rule). The plain language of 42 Pa.C.S. § 6351(e)(3)(ii)(A) mandates that a permanency hearing shall be held:

> within 30 days of an adjudication of dependency at which the court determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made.

¶ 14 Given the directive of this statute, Parents' argument that Mother's appeal of the October 4, 2007 orders should have precluded the court from conducting the October 31, 2007 permanency hearing fails completely. Upon finding the children to be dependent, determining the existence of aggravated circumstances, and deciding that no reunification efforts would occur, the trial court placed itself squarely within the reach of section 6351(e)(3)(ii)(A). If we were to accept Parents' position, the trial court would be forced to ignore the statutory mandates of the Juvenile Act in favor of maintaining the status *quo.* Without ruminating on the possible risks to children that may result from mere preservation of the status *quo,* we conclude that Parents' contention is contrary to the mandates of the Juvenile Act, which vest the dependency courts with broad discretion to act consistently in protecting the physical, mental, and moral welfare of children. *In re S.M.,* 418 Pa.Super. 359, 614 A.2d 312 (1992).

¶ 15 Moreover, although Parents rely upon Pa.R.A.P. 1701(a) in support of their claim that Mother's appeal of the dependency orders precluded the trial court from conducting a permanency hearing within thirty days, they virtually overlook Rule 1701(c), which states in pertinent part:

> Where only a particular item, claim or assessment adjudged in the matter is involved in an appeal, . . . the appeal . . . shall operate to prevent the trial court or other government unit from proceeding further with **only such item, claim or assessment,** unless otherwise ordered by the trial court or other government unit or by the appellate court or a judge thereof as necessary to reserve the rights of the appellant.

(emphasis added). Parents are mistaken that the dependency and permanency hearings addressed identical issues. The October 31, 2007 permanency hearing did not address the existence of dependency or aggravated circumstances, but instead, examined matters required by 42 Pa.C.S. § 6351(f) to ensure that the children's needs were being met. Those statutory considerations were not the focus of the October 4, 2007 dependency hearing. Consequently, Pa.R.A.P. 1701(c) did not impede the occurrence of the permanency hearing.

¶ 16 At the heart of both our decision today and our Supreme Court's direction in *H.S.W.C.-B* is the notion that the best interests of children are a driving force as courts confront issues relating to placements of dependent children and the balancing of parental interests. The mandate

that statutory hearings proceed at prescribed intervals is imperative in that it prevents children from languishing in foster care, denied of "much-needed permanency." *In the Interest of H.S.W.C.-B, supra* at 911. Maintaining the status *quo* while awaiting resolution of a parent's appeal could never justify the risk to a child forced to remain in a possibly unsafe or unsatisfactory situation. Accordingly, we conclude that despite Mother's appeal, the trial court did not err in conducting the statutorily-prescribed permanency hearing within thirty days of the disposition of dependency wherein it found the existence of aggravated circumstances.

■ ¶ 17 Before addressing the contentions raised solely by Mother, we note our standard of review:

In cases involving a court's order changing the placement goal ... to adoption, our standard of review is abuse of discretion. *In re N.C.,* 909 A.2d 818, 822 (Pa.Super.2006). To hold that the trial court abused its discretion, we must determine its judgment was "manifestly unreasonable," that the court disregarded the law, or that its action was "a result of partiality, prejudice, bias or ill will." *Id.* (quoting *In re G.P.-R.,* 851 A.2d 967, 973 (Pa.Super.2004)). While this Court is bound by the facts determined in the trial court, we are not tied to the court's inferences, deductions and conclusions; we have a "responsibility to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record." *In re A.K.,* 906 A.2d 596, 599 (Pa.Super.2006). Therefore, our scope of review is broad. *Id.*

*In re S.B.,* 208 Pa.Super. 21, 943 A.2d 973, 977 (2008).

¶ 18 Mother asserts that the trial court merely conducted a "bare bones" analysis in this matter. Relying upon *In re G.T.,* 845 A.2d 870 (Pa.Super.2004), and *In re M.W.,* 842 A.2d 425 (Pa.Super.2004), Mother cites to instances where courts found the existence of aggravated circumstances yet decided to preserve or reunify the family. Mother avers that if the trial court herein had undertaken similar analysis, it may have reached a different decision regarding reunification. Asserting that section 6351(f)(9)(i), (ii), and (iii) were disregarded, Mother suggests that the trial court did not determine whether a successful petition for termination of parental rights had been filed as to either child.

■ ¶ 19 We cannot agree. Mother's contention that the court abused its discretion following a finding of aggravated circumstances is unfounded. First, Mother's argument is misplaced since the trial court already had completed its analysis and determination of this issue in its October 4, 2007 orders. Moreover, although courts have elected in some cases to return children to their families after finding the existence of aggravated circumstances, the decision whether to pursue reunification is made on a case-by-case basis. After the trial court found aggravated circumstances herein, it was well within its discretion to order the cessation of reunification services. *In the Matter of A.H.,* 763 A.2d 873, 878 (Pa.Super.2000).

■ ¶ 20 We also reject Mother's claim that the court disregarded the provisions of 42 Pa.C.S. § 6351. That statute sets out specific issues which must be determined during the permanency hearing as follows, in relevant part:

**(f) Matters to be determined at permanency hearing.**—At each permanency hearing, a court shall determine all of the following:

(1) The continuing necessity for and appropriateness of the placement.

(2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.

(3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.

(4) The appropriateness and feasibility of the current placement goal for the child.

(5) The likely date by which the placement goal for the child might be achieved.

(5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.

(6) Whether the child is safe.

. . . .

(9) If . . . the court has determined that aggravated circumstances exist and that reasonable efforts to . . . preserve and reunify the family need not be made or continue to be made, whether the county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child unless:

   (i) the child is being cared for by a relative best suited to the physical, mental or moral welfare of the child;

   (ii) the county agency has documented a compelling reason for determining that filing a petition to terminate parental rights would not serve the needs and welfare of the child; or

   (iii) the child's family has not been provided with necessary services to achieve the safe return to the child's parent, guardian or custodian within the time frames set forth in the permanency plan.

42 Pa.C.S. § 6351(f). In construing section 6351, our Supreme Court noted that "[t]he Juvenile Court maintains a **continuing plenary jurisdiction** in dependency cases . . . and has the power to review the circumstances of dependent juveniles and to question . . . the legal custodian, CYS, and the foster parents concerning the condition and the needs of the dependent child." *In re Tameka M.*, 525 Pa. 348, 580 A.2d 750, 752 (1990) (emphasis added).

¶ 21 A review of the record demonstrates that each of the requirements of section 6351(f) was adequately considered and addressed by the trial court. Ms. Garrick's testimony informed the court regarding subsections (2), (4), and (6), respectively:

Q: Do you have a goal for both children at this time?

A: Yes, I am requesting that the goal be adoption.

Q: And do you feel that goal is appropriate under the circumstances?

A: Yes[,] due to the aggravated circumstances and no reunification and the Order of Adjudication and Disposition of October 4th.

. . . .

Q: And can you please summarize for the court the components of [the permanency] plans?

A: They are for the foster parents to provide a stable and loving environment, meet the medical, dental, and educational needs of the children. For the agency to locate an adoptive home for each child.

Q: And to what extent has the plan been complied with?

A: The foster parents are meeting the objectives for [L.P.] The objectives can't be met for [R.P.] at this time due to his hospitalization[,] and the agency has not yet determined an adoptive family.

. . . .

Q: And are the children safe in their present placement?

A: Yes, [R.P.] is receiving medical treatment for his injuries and [L.P.'s] needs are being met.

N.T., 10/31/07, at 8–10.

¶ 22 Similarly, the requirements of subsections (5), (5.1), and (9) were established when the proposed orders were submitted to the court for approval. In each child's permanency plan, CYS indicated that the likely date by which adoption might be achieved was April 30, 2008; the court subsequently ordered placement for adoption by July 31, 2008. Permanency Hearing Determinations and Order [for L.P.], 11/1/07, at 2, 6; Permanency Hearing Determinations and Order [for R.P.], 11/1/07, at 2, 6. Moreover, CYS informed the court of its intention to file petitions to terminate parental rights and to identify families to adopt the children. Permanency Hearing Determinations and Order [for L.P.], 11/1/07, at 4; Permanency Hearing Determinations and Order [for R.P.], 11/1/07, at 4.

¶ 23 Further, the provisions of 42 Pa. C.S. § 6351(9)(i), (ii), and (iii) are not applicable. There is no relative caring for the children, there is no documented reason that a petition to terminate parental rights would not serve the best interests of the children, and there are aggravated circumstances in existence; accordingly, CYS was not required to provide services to Mother. Although Mother contends that the trial court should have determined whether a petition to terminate parental

rights would have been **successful,** she has mischaracterized the requirements of the statute in that 42 Pa.C.S. § 6351(f)(9) mandates that the court determine **whether** the county agency filed a petition to terminate parental rights. As noted previously, the trial court fulfilled its obligations through the discussion with CYS concerning its intent to file a petition to terminate parental rights and to identify possible adoptive families for the children.

¶ 24 We also cannot conclude that the trial court abused its discretion regarding the placement of R.P. and L.P. in foster care as of October 31, 2007.[4] Mother suggests the trial court overlooked the children's best interests by failing to consider the bond formed between R.P. and L.P.

¶ 25 We conclude that Mother has waived this claim. Counsel failed to raise the issue of the children's separation before the trial court at the October 31, 2007 permanency hearing and did not request that R.P. and L.P. be placed together upon R.P.'s release from the hospital. Such failure results in waiver. *Bednarek v. Velazquez,* 830 A.2d 1267 (Pa.Super.2003) (issue of whether court erred in failing to permit full *de novo* hearing not raised in trial court waived claim); *see also* Pa. R.A.P. 302(a) (issues not raised in trial court are waived and cannot be raised for the first time on appeal).

¶ 26 Even if not waived, Mother's argument that the trial court disregarded the children's bond and did not place them

---

4. Mother's vague final issue relates to asserted violations of the equal protection clauses of the Pennsylvania and United States constitutions. In addition to being waived due to Mother's failure to assert a particularized argument in her Pa.R.A.P.1925(b) statement such that the trial court was unable to identify the claim, it is also premature for the identi-

cal reasons delineated *infra* in our disposition of her contention relating to the children's bond. *Reinert v. Reinert,* 926 A.2d 539 (Pa.Super.2007) (overbroad and imprecise issue in Pa.R.A.P.1925(b) statement and on appeal results in waiver of issue because it fails to identify in concise manner the issue to be pursued).

together is specious in light of the fact that R.P. was hospitalized as of the October 31, 2007 permanency hearing. A lengthy inquiry into the children's bond was unnecessary at that time; the trial court did not consider placing the children together because it was impossible to do so. In addressing this issue, the trial court acknowledged that "at least one more review hearing must be heard in this matter pursuant to 42 Pa.C.S. § 6351(e)(3)(ii)(A)." Trial Court Opinion, 1/18/08, at 9. While noting that R.P. likely will require "special care for the rest of his life," the trial court nevertheless represented that "if R.P.'s condition has improved, this Court may consider the placement of the children together in a foster or adoptive home." *Id.* at 9.

¶ 27 While a decision ultimately may be made to place the children together in the future, "the general rule disfavoring separation of siblings … is not controlling" as "no absolute constitutional or statutory right to be raised with a sibling yet exists in our jurisprudence." *In re L.J.,* 456 Pa.Super. 685, 691 A.2d 520, 525, 527 (1997). The court, in any event, has discretion to place R.P. and L.P. according to the individual best interests of each child. *In the Interest of Lilley,* 719 A.2d 327 (Pa.Super.1998). The health, safety, and welfare of each child supersede all other considerations. *In re R.T.,* 778 A.2d 670, 678 (Pa.Super.2001).

¶ 28 Orders affirmed.