J-S67031-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: T.Z.W.T., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.T.W., MOTHER | : | No. 914 EDA 2017 |

Appeal from the Order March 7, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000437-2016,
CP-51-DP-0002518-2014

| | | |
|---|---|---|
| IN THE INTEREST OF: T.Q.K.W.T., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.T.W., MOTHER | : | No. 915 EDA 2017 |

Appeal from the Order March 7, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000438-2016,
CP-51-DP-0002521-2014

| | | |
|---|---|---|
| IN THE INTEREST OF: T.Q.T.W., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.T.W., MOTHER | : | No. 916 EDA 2017 |

Appeal from the Order March 7, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000439-2016,
CP-51-DP-0002520-2014

BEFORE: GANTMAN, P.J., MUSMANNO, J., and STEVENS*, P.J.E.

MEMORANDUM BY GANTMAN, P.J.: **FILED APRIL 12, 2019**

In these consolidated appeals, Appellant, S.T.W. ("Mother") challenges the orders entered in the Philadelphia County Court of Common Pleas, Family Court, which terminated her parental rights to her three children,

_____

* Former Justice specially assigned to the Superior Court.

T.Z.W.T. (born in August 2014), T.Q.K.W.T. (born in August 2011) and T.Q.T.W. (born in April 2013). We affirm the court's orders as to T.Z.W.T. and T.Q.T.W. We also affirm the court's decision under Section 2511(a) and (b) with respect to T.Q.K.W.T., but we must vacate that termination order and remand for appointment of counsel under 23 Pa.C.S.A. § 2313(a), and for further evaluation and reconsideration of that termination order under current prevailing law, without prejudice to reinstate it after reconsideration.[1]

The trial court accurately set forth the relevant facts and procedural history of this case as follows:

> In 2014, the family became known to the Department of Human Services ("DHS") pursuant to a General Protective Services ("GPS") report which alleged that Children resided in an abandoned house with Mother and her paramour. It was also alleged that [infant] Child, T.Z.W.T., was hospitalized at St. Christopher's Children's Hospital due to a blood infection caused by environmental problems in the abandoned house. On October 24, 2014, T.Z.W.T. was discharged from St. Christopher's Hospital…and T.Z.W.T. was required to have a gastrostomy tube for six months. Mother had previously been diagnosed with bipolar disorder and was not receiving treatment.

---

[1] Disposition of this case was delayed because Mother raised an issue on appeal, concerning the appointment of legal counsel for Children, that was pending before this Court *en banc* in a case recently decided on December 10, 2018. **See In re K.R.**, 200 A.3d 969 (Pa.Super. 2018) (*en banc*). We were also awaiting our Supreme Court's decision in the case of **In re T.S.**, ___ Pa. ___, 192 A.3d 1080 (2018), *cert. denied*, ___ U.S. ___, ___ S.Ct. ___, 2019 WL 659981 (Feb. 19, 2019). Since those decisions, the law in this area has evolved and changed, depending on the circumstances of each case.

On the day of Child T.Z.W.T.'s release from the hospital, October 24, 201[4], DHS obtained an Order of Protective Custody ("OPC") for the Children. [On October 27, 2014, the court appointed the Defender Association of Philadelphia, Child Advocacy Unit, to serve as counsel and guardian *ad litem* ("GAL") for Children. Additionally, DHS placed T.Z.W.T. and T.Q.T.W. with their Maternal Grandmother, and T.Q.K.W.T. with his Maternal Aunt.] On November 7, 2014, Children were adjudicated dependent and committed and placed in the DHS foster care.[2] On January 13, 2015, the Community Umbrella Agency ("CUA") held the initial Single Case Plan ("SCP") meeting. The goal for the family was reunification. The objectives identified for Mother were (1) to stabilize her mental health; (2) to complete intake at the Wedge Medical Center ("Wedge"); (3) to improve parenting/coping skills; (4) to continue to actively participate in all parenting, anger management counseling sessions; (5) to maintain her relationship with Children; (6) to attend her scheduled visits with Children; (7) to maintain safe and stable housing; (8) to enroll in the Achieving Reunification Center ("ARC").

On January 15, 2016, Dr. William Russell conducted a parenting capacity evaluation of Mother. On January 26, 2015, Mother participated in a psychological evaluation conducted by Genevieve Chaney, PsyD and Timothy Overton, BA. Pursuant to this Psychological Evaluation, Dr. Chaney opined that Mother suffered from a mild intellectual disability and borderline personality. Dr. Chaney recommended that Mother (1) receive a psychiatric exam; (2) Mother be referred to Philadelphia's Disability Services to determine if she was eligible for services; (3) Mother should comply with DHS services; (4) Mother should receive a parenting evaluation; (5) Mother should be explained things slowly and in writing.

On [May 17], 2016, DHS filed the underlying Petition to

_____

[2] Children continued to reside with their foster caregivers, who have become pre-adoptive resources for Children.

Terminate Mother's Parental Rights to Child[ren]. Prior to the filing of the Petition, Mother had failed to comply with her SCP objectives and Mother had failed to enroll in the ARC program for housing and anger management. She also failed to enroll in domestic violence counseling. Mother was also inconsistent with participating in her mental health treatment and Mother had not stabilized her mental health. On March 7, 2017[,] this [c]ourt terminated Mother's parental rights to Children pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), …(8)[, and (b)[3]]. The [c]ourt ruled that [Children's] goal be changed to adoption. Thereafter, Mother filed [timely] Notice[s] of Appeal on March 17, 2017[, and concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i)].

(Trial Court Opinion, filed May 23, 2017, at 3-5) (internal citations omitted).[4]

Mother raises four issues for our review:

DID THE DEPARTMENT OF HUMAN SERVICES ("DHS") SUSTAIN ITS BURDEN UNDER 23 PA.C.S.A. § 2511(A)(1), (2), (5), OR (8) THAT MOTHER'S RIGHTS SHOULD BE TERMINATED WHEN THERE WAS EVIDENCE THAT MOTHER HAD COMPLETED AND/OR HAD BEEN ACTIVELY COMPLETING HER PERMANENCY GOALS?

WAS THERE SUFFICIENT EVIDENCE PRESENTED TO ESTABLISH UNDER 23 PA.C.S.A. § 2511(B) THAT IT WAS IN THE BEST INTERESTS OF…CHILDREN TO TERMINATE MOTHER'S PARENTAL RIGHTS?

DID THE [TRIAL] COURT ERR WHEN IT MADE A SPECIFIC

---

[3] The court also terminated the parental rights of Children's father, A.T. ("Father"). Father is not a party to this appeal.

[4] We see no reason to involve or discuss in these appeals the recent decision of **Commonwealth v. Walker**, ___ Pa. ___, 185 A.3d 969 (2018) (requiring prospectively, separate notices of appeal from single orders which resolve issues arising on separate trial court docket numbers). Mother's appeals predate **Walker**.

> FINDING OF FACT BY RELYING ON DHS "EXHIBIT A" ENTITLED "STATEMENT OF FACTS" THAT WAS ATTACHED TO THE PETITIONS FOR GOAL CHANGE AND TERMINATION OF PARENTAL RIGHTS WHEN THERE WAS NO STIPULATION OR TESTIMONY PRESENTED AS TO THE "FACTS" RELIED UPON IN THAT EXHIBIT?
>
> DID THE [TRIAL] COURT FULLY CONSIDER ALL NECESSARY FACTORS PURSUANT TO THE PENNSYLVANIA JUVENILE ACT, SPECIFICALLY 42 PA.C.S.A. § 6351(E) [AND] (F), IN ITS DETERMINATION THAT THE GOAL OF ADOPTION IS IN THE CHILDREN'S BEST INTEREST?

(Mother's Brief at 4).[5]

The standard and scope of review applicable in termination of parental rights cases are as follows:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that it would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.
>
> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by the finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.
>
> The standard of clear and convincing evidence means

_____

[5] For purposes of disposition, we have reordered Mother's issues.

testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. We may uphold a termination decision if any proper basis exists for the result reached. If the trial court's findings are supported by competent evidence, we must affirm the court's decision, even though the record could support an opposite result.

*In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008) (internal citations omitted).

We combine Mother's first, second, and third issues, in which she argues she had been actively treating her mood disorder at the time DHS filed the petition for involuntary termination of her parental rights. Mother asserts her mental health had improved to the point where she no longer needed medication. Mother maintains she was participating in her mental health treatment at the Wedge facility. Mother contends she was unable to complete therapy because her therapist stopped working at that location, and no one contacted Mother about continuing treatment with a new therapist. Mother highlights the CUA caseworker's testimony that Mother's home would be safe and appropriate for Children once she obtained beds, and that Mother was no longer a danger to Children. Mother claims she remedied the mental health and housing issues, which brought Children into DHS' care. Mother challenges the court's supposition that she was residing with Father. Mother insists she has a bond with Children. Mother submits the court failed to consider the effect of Children not residing together in one household.

Mother also complains the trial court opinion cited to facts presented in DHS' "Statement of Facts" (attached as an exhibit to its termination petition), where those facts were not established at the termination hearing. Mother submits the "Statement of Facts" is nothing more than unproven allegations. Mother concludes DHS failed to meet its burden under Section 2511(a) and (b), and this Court must reverse the order terminating Mother's parental rights to Children. We disagree that Mother is entitled to relief on these grounds.

The court granted DHS' petition for involuntary termination of Mother's parental rights on the following grounds:

**§ 2511.  Grounds for involuntary termination**

**(a)   General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(5)  The child has been removed from the care of the parent by the court or under a voluntary agreement

with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). "Satisfaction of any one subsection of Section 2511(a), along with consideration of Section 2511(b), is sufficient for involuntary termination of parental rights." **In re K.Z.S.**, 946 A.2d 753, 758 (Pa.Super. 2008).

"Under [S]ection 2511, the trial court must engage in a bifurcated process." *In re I.J.*, 972 A.2d 5, 10 (Pa.Super. 2009).

> The initial focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies at least one of the…statutory grounds delineated in section 2511(a). If the trial court determines that the parent's conduct warrants termination under section 2511(a), then it must engage in an analysis of the best interests of the child…under section 2511(b), taking into primary consideration the developmental, physical, and emotional needs of the child.
>
> *       *       *
>
> [A] best interest of the child analysis under [section] 2511(b) requires consideration of intangibles such as love, comfort, security, and stability. To this end, this Court has indicated that the trial court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond. Moreover, in performing a "best interests" analysis[, t]he court should also consider the importance of continuity of relationships to the child, because severing close parental ties is usually extremely painful. The court must consider whether a natural parental bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship. Most importantly, adequate consideration must be given to the needs and welfare of the child.

*Id.* at 10-12 (internal citations and quotation marks omitted).

Section 2511 outlines certain irreducible minimum requirements of care that parents must provide for their children and a parent who cannot or will not meet the requirements may properly be considered unfit and have her parental rights terminated. *In re B.L.L.*, 787 A.2d 1007 (Pa.Super. 2001).

There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this [C]ourt has held that the parental obligation is a positive duty which requires affirmative performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert [herself] to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of …her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted). Accordingly, "a parent's basic constitutional right to the custody and rearing of…her child is converted, upon the failure to fulfill…her parental duties, to the child's right to have proper parenting and fulfillment of his…potential in a permanent, healthy, safe environment." *Id.* at 856.

"When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as

well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa.Super. 2010) (internal citations omitted). "Above all else[,] adequate consideration must be given to the needs and welfare of the child. A parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights." *Id.* (internal citations omitted). Further, "the general rule disfavoring separation of siblings is not controlling" in a termination case. *In re R.P.*, 956 A.2d 449, 458 (Pa.Super. 2008). Rather, the court has discretion to place siblings separately if it serves their best interests, as "[t]he health, safety, and welfare of each child supersede all other considerations." *Id.*

Instantly, the trial court explained:

> Children were adjudicated dependent on November 7, 2014. The record demonstrated Mother's ongoing unwillingness to provide parental care or control for Children; to perform any parental duties and a failure to remedy the conditions that brought Children into care. The [c]ourt found clear and convincing evidence that termination of Mother's parental rights would be in the best interest of Children pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8) and 23 Pa.C.S.A. § 2511(b).
>
> At the [t]ermination [h]earing, Dr. William Russell testified in reference to his Parental Capacity Evaluation of Mother which occurred on January 15, 2016. Dr. Russell testified that at the time of the evaluation he had concluded that Mother was not able to provide safety to her children due to her mood instability. Dr. Russell testified that Mother required consistent mental health treatment to achieve the mood stability required for her to provide safety for her Children. Dr. Russell testified that as a result of Mother's lack of mood stability she was unable to resolve housing issues and had difficulties interacting with other people. Dr. Russell testified that Mother had been diagnosed as

being [bipolar] and having symptoms of a borderline personality disorder requiring that Mother receive consistent mental health treatment.

At the termination hearing, the CUA Representative testified that Mother was made aware of her SCP objectives. The objectives identified for Mother were (1) stabilize her mental health; (2) to complete intake at the Wedge Medical Center ("Wedge"); (3) to improve parenting/coping skills; (4) to continue to actively participate in all parenting, anger management counseling sessions; (5) to maintain her relationship with Children; (6) to attend her scheduled visits with Children; (7) to maintain safe and stable housing; (8) to enroll in the Achieving Reunification Center ("ARC").

The CUA Representative testified that Mother had failed to attend domestic violence training, which was significant due to a history of domestic violence between Mother and Father. The CUA Representative testified it was her belief that Mother and Father lived together. The CUA Representative testified that Mother was inconsistent with her mental health treatment. The CUA Representative testified that the pre-adoptive parent of T.Q.K.W.T. ("Maternal Aunt"), was able to provide the child with love, safety and stability and support. The CUA Representative testified that T.Z.W.T. and T.Q.T.W. were in the care of their maternal grandmother and that she was able to provide love, safety, stability and support. The CUA Representative testified that Children were bonded to their pre-adoptive foster parents. The CUA Representative testified that changing Children's goals from reunification to adoption would not cause irreparable harm to Children. The CUA Representative also testified that it would be in Children's best interests to be adopted. The CUA Representative testified that it was in Children's best interests that Mother's parental rights be terminated. The CUA Representative testified that the termination of Mother's parental rights would not cause Children irreparable harm.

This [c]ourt found the testimony of the CUA Representative and Dr. Russell to be credible and accorded [their] testimonies great weight. Based upon this

- 12 -

testimony and the documents in evidence, this [c]ourt found clear and convincing evidence to terminate Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5) and (8) as Mother failed to remedy the conditions that brought her Children into care. The [c]ourt further concluded that the termination of Mother's parental rights would be in the best interest of Children pursuant to 23 Pa.C.S.A. § 2511(b). This [c]ourt concluded that the respective pre-adoptive foster parents were able to meet Children's needs.

(Trial Court Opinion at 5-8) (internal citations and footnote omitted).

Additionally, the court stated on the record at the conclusion of the termination hearing:

All right. Based upon the testimony I heard, the exhibits presented, which I accept, and based upon the credibility of the CUA worker, Dr. Russell, and the visitation coach, I find them to be credible. I do not find the testimony of Father or Mother to be credible. They—I'm not convinced that they're not seeing each other. Whether they're living together or not, it's curious that they're both using [the same] address….

Father as late as 2016, it's appearing on his—his criminal extract. He gave the [c]ourt that address…. And Mr. Jenkins, the visitation coach, said he was driving Mother home, and passed in front of the house and who happened to be there? [Father]. And that was in November. So, she was living there in November. He was living there. And I'm convinced he's probably living there to—to this day in violation of the [c]ourt order as late as November 14th, when I heard the case, and [M]aternal [G]randmother testified that Mother was taking the kids to see Father.

And there was a violent history. She testified to that. And there's a safety issue. Don't tell me there's no safety issue with him around and—and a domestic violence history that [C]hildren if—if they were reunited with either parent has gone unaddressed. There's—there's never been any domestic violence counseling.

- 13 -

As far as—you're saying this is a housing issue. The—Dr. Russell clearly testified mental health is a big issue in this case. And she stopped going in June on her own and never re-enrolled according to her because nobody called her. Well, obviously, she needs continuing mental health treatment.

And I mean Father's testimony is just totally incredible with regard to where he lives and what the living arrangements are. …

As far as the bond—the bonding of [M]other, I believe there's a bond. But it's not a parental bond. It—it's a bond of someone that—that apparently has an attachment to [C]hildren. And they're glad to see her when—when she gets there. But she's not a parent at this point. Hasn't been for the last two-and-a-half years that these children have been in placement.

(N.T. Termination Hearing, 3/7/17, at 165-67). The record supports the court's analysis.

The record makes clear Children's **primary** bond is with their respective pre-adoptive parents. (**See id.** at 92; 118-19; 167). As well, the fact that T.Q.K.W.T. is in a separate pre-adoptive home is not controlling, where his continued placement with Maternal Aunt serves his best interests. **See In re R.P., supra**. Further, the record supports each of the facts outlined by DHS in its "Statement of Facts" attached to its termination petition. That the court referred to the "Statement of Facts" in its opinion, over other places in the record, is of no moment, where the record supports the court's decision to terminate Mother's parental rights to Children under Section 2511(a)(1), (2), (5), (8), and (b). **See In re Adoption of K.J.,**

*supra*.

Notwithstanding the formal statement of her fourth issue, Mother argues the court failed to appoint separate legal counsel for Children to express their preferred outcome in this case. Mother concludes that recent changes in the law require this Court to reverse and remand for the appointment of separate legal counsel and a *de novo* review of the appropriateness of the goal change[6] and termination decision. We agree with Mother on this issue but only with respect to the oldest child, T.Q.K.W.T.

Section 2313 of the Domestic Relations Code governs representation of Children in a contested termination proceeding, in pertinent part, as follows:

### § 2313. Representation

**(a) Child.**—The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian *ad litem* to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

---

[6] Mother mentions, but fails to develop, a separate cogent argument concerning the appropriateness of the goal change decision. Instead, she focuses her argument on the court's failure to appoint separate legal counsel to express Children's preferred outcome in this case.

23 Pa.C.S.A. § 2313(a). Our Supreme Court recently interpreted and applied Section 2313(a) as follows:

> [A] majority of the Court agreed on several points: (a) in the context of contested termination-of-parental-rights ("TPR") proceedings, the first sentence of Section 2313(a) requires that the common pleas court appoint an attorney to represent the child's legal interests, *i.e.*, the child's preferred outcome; (b) where there is a conflict between the child's legal interests and his best interests, an attorney-guardian *ad litem* (an "attorney-GAL"), who advocates for the child's best interests, cannot simultaneously represent the child's legal interests; and (c) in such a circumstance, the failure to appoint a separate attorney to represent the child's legal interests constitutes structural error, meaning it is not subject to a harmless-error analysis.

*In re T.S.* at ___, 192 A.3d at 1082 (summarizing agreed-upon positions of *In re Adoption of L.B.M.*, 639 Pa. 428, 161 A.3d 172 (2017)) (internal footnotes omitted). Our Supreme Court has made clear: "The statutory right under Section 2313(a) belongs to the child, not the parent." *T.S., supra* at ___, 192 A.3d at 1087. Thus, "the failure of any party, including Mother, to affirmatively request separate counsel for the children cannot…[constitute] waiver." *Id.*

Nevertheless, "if the wishes of the child cannot be ascertained [due to a child's young age], the GAL has no duty to advise the court of such wishes. For purposes of the proceeding, such wishes do not exist." *Id.* at ___, 192 A.3d at 1089-90. Consequently, where an attorney-GAL is appointed to represent the child's best interests, Section 2313(a) does not require the appointment of separate legal counsel to advance child's legal interests, if

the child is too young to articulate a "preferred outcome." ***Id.*** (establishing presumption that child three years of age or younger cannot form subjective, articulable preference that would necessitate appointment of separate legal counsel to advocate during termination proceeding).

Additionally, the court's failure to appoint separate legal counsel does not constitute reversible error, so long as the child is represented by an attorney-GAL and the record **makes clear** no conflict exists between the child's best interests and legal interests. ***See, e.g., In re K.R., supra*** (holding court's failure to appoint separate counsel to represent children's legal interests did not constitute reversible error, where attorney-GAL expressed children's preferences on record and confirmed no conflict existed between children's legal and best interests); ***In re G.M.S.***, 193 A.3d 395 (Pa.Super. 2018) (declining to remand for appointment of separate legal counsel, where expert testified at termination hearing that she interviewed child who preferred to be adopted by maternal grandmother; child's legal interests were aligned with child's best interests).

Instantly, on October 27, 2014, the court appointed the Defender Association of Philadelphia, Child Advocacy Unit, to serve as counsel and GAL for Children throughout all of the relevant proceedings in this case. The court did not appoint separate legal counsel for Children for the termination proceedings. At the time of the termination hearing on March 7, 2017, T.Q.K.W.T. was five years old, T.Q.T.W. was three years old, and T.Z.W.T.

was two years old.

Initially, we observe that although the issue concerning appointment of separate legal counsel for Children was raised for the first time on appeal, we can review it. ***See In re T.S., supra***. Nevertheless, that claim merits no relief concerning the two Children, T.Q.T.W. and T.Z.W.T., as they were too young to articulate a preferred outcome at the time of the termination hearing. ***See id.*** Regarding the oldest child, T.Q.K.W.T., however, the record shows the court failed to appoint separate legal counsel, as required under Section 2313(a) and current prevailing law. ***See*** 23 Pa.C.S.A. § 2313(a); ***In re T.S., supra***. Significantly, the record lacks any evidence of T.Q.K.W.T.'s preferred outcome in this matter, even though the record demonstrates that his primary bond is with Maternal Aunt, who is meeting all of his needs.

Under these circumstances, we must vacate the termination order regarding T.Q.K.W.T., without prejudice, and remand the case for further proceedings. Upon remand, the court shall appoint separate counsel to represent T.Q.K.W.T.'s legal interests. After review of the prior proceedings and consultation with T.Q.K.W.T., legal-interests counsel shall notify the court of T.Q.K.W.T.'s preferred outcome and whether a new hearing is necessary for an opportunity for counsel to advocate on T.Q.K.W.T.'s behalf. The court shall conduct a new hearing only if a new hearing is necessary to explore T.Q.K.W.T.'s preferred outcome in comparison to his best interests.

*See In re: Adoption of T.M.L.M.*, 184 A.3d 585 (Pa.Super. 2018) (vacating and remanding for appointment of legal-interests counsel, where child was five years old at termination hearing, and no evidence in record showed consideration of child's preferred outcome). *Compare In re K.R., supra*; *In re G.M.S., supra*. Accordingly, we affirm the court's orders as to T.Z.W.T. and T.Q.T.W. We also affirm the court's decision under Section 2511(a) and (b) with respect to T.Q.K.W.T., but we must vacate that termination order and remand for appointment of counsel for T.Q.K.W.T., under 23 Pa.C.S.A. § 2313(a), and for reconsideration of that termination order under current prevailing law, without prejudice to reinstate the termination order following further evaluation and reconsideration.

Orders affirmed as to T.Z.W.T. and T.Q.T.W.; order regarding T.Q.K.W.T. is vacated without prejudice and his case is remanded for the appointment of legal-interests counsel under 23 Pa.C.S.A. § 2313(a) and for further evaluation and reconsideration. Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/12/19

- 19 -