J-S52016-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: M.D.O., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: S.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1269 EDA 2019 |

Appeal from the Order Dated April 16, 2019,
in the Court of Common Pleas of Bucks County,
Orphans' Court at No(s):  2018-9133.

BEFORE:  OTT, J., KUNSELMAN, J., and McLAUGHLIN, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED OCTOBER 21, 2019**

In this matter, S.B. (Mother) appeals the order granting the petition filed by the Bucks County Children Youth Social Services Agency (CYS) that involuntarily terminated her parental rights to her five-year-old son, M.D.O. (Child), pursuant to the Adoption Act.[1]  ***See*** 23 Pa.C.S.A. § 2511(a)(2), (5), (8) and (b).  After review, we affirm.

The relevant history is as follows:

Child was born in August 2013.  The family came to the attention of CYS in July 2015 upon allegations of Mother's substance abuse and tentative neglect, but CYS closed the matter that November.  Five months later, in April 2016, Mother gave birth to her fourth child – a half-brother to Child; the newborn tested positive for methamphetamines and amphetamines, causing

_____

[1] Child's father is deceased.

CYS to reopen its case. In September 2016, Mother tested positive for methamphetamines and amphetamines. CYS implemented a safety plan, prohibiting Mother from being alone with any of her children. In October 2016, Mother refused a drug test and subsequently failed to attend a substance abuse evaluation. In December 2016, Mother tested positive for methamphetamines and cocaine. Mother indicated that she would begin substance abuse treatment in January 2017. She did not follow through.

In March 2017, the trial court adjudicated Child dependent, along with his three siblings: the younger half-brother and two older sisters. Child's sisters were taken in by the maternal grandparents; eventually the court confirmed custody to the grandparents and the sisters' cases were closed. Similarly, the father of Child's half-brother eventually obtained custody. Child was the only sibling remaining in a general foster care placement.

Following the dependency adjudication, Mother was assigned the following goals to aid her reunification with Child: 1) abstain from drug use; 2) complete substance abuse and mental health evaluations and follow corresponding treatment plans; 3) obtain a source of income to support herself and Child; 4) obtain suitable housing for herself and Child.

In February 2018, Mother attended a 21-day inpatient substance abuse program. However, it was immediately recommended that Mother participate in step-down care, but she refused to comply. At a permanency review hearing in April 2018, CYS indicated its intention to petition for a goal change from reunification to adoption. Notwithstanding CYS's desire to proceed with

termination, the court assisted Mother in establishing short-term reunification goals such that she could achieve unsupervised visitation within 30 days. Over the next month, Mother was to comply with these goals: 1) completion of 10 random drug screens; 2) attendance of weekly Narcotics Anonymous meetings; and 3) attendance of weekly outpatient treatment. Mother refused. Over the course of this critical 30-day period, CYS could only make successful contact with Mother once, despite the fact that caseworkers called and appeared at Mother's home. Thereafter, CYS attempted to drug test Mother 18 more times. Mother either avoided contact with CYS or refused to take the drug test.

In August 2018, CYS petitioned to change the goal from reunification to adoption. In October 2018, CYS petitioned to terminate Mother's parental rights. The court held a hearing on March 26, 2019 and issued a termination decree on April 4, 2019.[2] Mother filed a timely appeal. Mother presents the following issues for our review:

> 1. [Did] the trial court abuse its discretion when it determined that Mother's failure to clean [*sic*] proves incapacity, abuse, neglect or refuse so as to cause the child to be without essential parental care, control, or subsistence necessary for [Child's] physical or mental wellbeing as required under Section 2511(a)(2)?
>
> 2. Did the trial court abuse its discretion when it determined that termination of parental rights best

---

[2] Child's legal interests were properly represented pursuant to 23 Pa.C.S.A. § 2313(a). ***See also In re Adoption of L.B.M.***, 161 A.3d 172 (Pa. 2017).

served the needs and welfare of [Child] under Section 2511(a)(5) and Section 2511(a)(8)?

3. Did the trial court abuse its discretion when it determined that termination of parental rights met the developmental, physical and emotional needs and welfare of [Child] as required under Section 2511(b)?

Mother's Brief at 8.

We review these claims mindful of our well-settled standard or review:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and internal quotations marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

- 4 -

> One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (citation and quotation marks omitted).

In this case, the court terminated Mother's parental rights pursuant to Section 2511(a)(2), (5), (8), and (b). We need only agree with the court as to any one subsection of 2511(a), as well as Section (b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

Instantly, we analyze the trial court's decision to terminate under Section 2511(a)(2) and (b):

> (a) **General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> …
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> …
>
> (b) **Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental,

- 5 -

physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S. § 2511(a)(2), (b).

Regarding Section 2511(a)(2), we have explained:

In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties.

***In re Adoption of C.D.R.***, 111 A.3d 1212, 1216 (Pa. Super. 2015) (citations, internal quotation marks, and indentation omitted).

Instantly, Mother acknowledges that her drug use caused the removal and dependency adjudication of her children. In other words, she concedes that CYS satisfied the first two elements of the Section 2511(a)(2) analysis. The question is whether Mother cannot or will not remedy her incapacity. Mother testified that she has remained drug free following her stint in the 21-day inpatient program. The trial court evidently did not find Mother's testimony to be credible.

After her completion of the inpatient program, Mother refused to cooperate with CYS. She refused to participate in the outpatient treatment plan. She similarly refused to take a drug screen. According to the record, CYS afforded Mother 28 opportunities to present a clean drug screen between February 2018 (the end of her inpatient program) and August 2018 (when CYS stopped seeking Mother's compliance after the goal change). Mother's argument that CYS failed to provide evidence of her drug use following the inpatient program is a specious one. Mother overlooks her refusal to cooperate with CYS at a most critical juncture.

Mother argues further that CYS did not offer her a drug screen after August 2018, when the goal changed to adoption. Again, Mother's argument ignores the dozens of prior opportunities CYS previously gave her. And as a matter of course, CYS's failure to provide services is not grounds to deny a termination. *See In re D.C.D.*, 105 A.3d 662, 672 (Pa. 2014) ("Neither [Sections 2511] (a) or (b) requires a court to consider the reasonable efforts provided to a parent prior to termination of parental rights.").

In reaching its decision, the court had to consider Mother's history of drug abuse over the prior two years, her refusal to participate in treatment, her inability to provide documentation of her sobriety, and the negative inferences therefrom. The counterbalance to these facts is Mother's testimony. The court did not believe Mother, and it determined that Mother was either incapable of remedying her incapacity or she outright refused to remedy the conditions that led to Child's removal. Thus, the trial court

determined that CYS met all three elements of the Section 2511(a)(2) analysis. The record supports this determination, and thus the court did not abuse its discretion. Therefore, we conclude that the first prong of the termination analysis was satisfied.

Next, we consider whether termination was proper under Section 2511(b). With regard to Section 2511(b), our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include [i]ntangibles such as love, comfort, security, and stability.... [T]his Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond.

*In re T.S.M.*, 71 A.3d at 267 (internal case citations omitted).

While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best interest analysis, it is nonetheless only one of many factors to be considered by the trial court when determining what is in the best interest of the child. *In re A.D.*, 93 A.3d 888, 897 (Pa. Super. 2014) (citing *In re K.K.R.–S.,* 958 A.2d 529, 535–536 (Pa. Super. 2008). The mere existence of an emotional bond does not preclude the termination of parental rights. *Id*., 93 A.3d at 897-898; *see also In re T.D.*, 949 A.2d 910 (Pa. Super. 2008) (trial court's decision to terminate parents' parental rights was

- 8 -

affirmed where court balanced strong emotional bond against parents' inability to serve needs of child). Rather, the trial court must examine the status of the bond to determine whether its termination "would destroy an existing, necessary and beneficial relationship." *Id*. at 898 (citation omitted).

Instantly, Mother contends the court ran afoul of Section 2511(b) because the Child will be permanently separated from his siblings. Mother cites the general rule disfavoring the separation of his siblings. She also contends that she had a strong parental bond with Child at the onset of the case. Mother's arguments are meritless.

First, the case Mother replies upon, *In re R.P.*, actually stands for the exact opposite proposition; the court has the discretion to separate siblings when appropriate:

> While a decision ultimately may be made to place the [siblings] together in the future, the general rule disfavoring separation of siblings is not controlling as no absolute constitutional or statutory right to be raised with a sibling yet exists in our jurisprudence. The court, in any event, has discretion to place [siblings] according to the individual best interests of each child. The health, safety, and welfare of each child supersede all other considerations.

*In re R.P.*, 956 A.2d 449, 458 (Pa. Super. 2008) (citations and quotation marks omitted).

More importantly, the siblings do not live with Mother; in other words, a denial of CYS's termination petition would not keep the children together. Most importantly, Child's foster parents have facilitated a relationship between Child and his siblings. The children have visits, including sleepovers. The

foster parents also fostered Child's younger half-brother until that sibling was reunified with his biological father. While the court would have the discretion to separate the siblings, the record does not even support the proposition that termination would adversely affect Child's sibling relationships.

Regarding the relationship between Mother and Child, Mother alludes to Child's initial frustration when he had to leave Mother after his visits with her. However, Child's counsel articulated that Child was adamant in his desire to remain with the foster parents, who he referred to as his real parents. Although we do not end our inquiry upon the stated preference of a young child, we do not discount it either. Child's strong desire to remain with his foster parents supports the inference that termination of Mother's rights would not destroy a bond worth preserving. Questions of bond and preference aside, the Child is undoubtedly in need of stability and security. The court found clear and convincing evidence that termination will meet those needs. We discern no abuse of discretion.

In sum, we conclude that the trial court properly determined that CYS met both prongs of the termination analysis under Sections 2511(a)(2) and (b). We need not review the court's decisions under Sections 2511(a)(5) and (8).

Order affirmed.

Judge Ott joins this memorandum.

Judge McLaughlin concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/21/19</u>